For Publication

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN SAWYER,<br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, SOCIAL SECURITY ,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO. 17-644 |

## OPINION

This case involves a narrow and precise question, but one which continues to beguile parties and courts in the Third Circuit: When must an Administrative Law Judge ("ALJ") tell a vocational expert that an applicant has "moderate" limitations in concentration, persistence, or pace? In a published decision from 2004, the Third Circuit suggested the answer was "always." But after an intervening change in regulations, at least three unpublished decisions have suggested the opposite. District courts in the Third Circuit are split down the middle. So, which is it?

I.    FACTS

The voluminous history of this case is set forth in Magistrate Judge Hey's prodigious and well-researched Report and Recommendation. The facts relevant for the present question are detailed, in short, below:

On August 20, 2013, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"). On June 29, 2015, Plaintiff appeared before the ALJ, where a vocational expert testified. The ALJ proceeded through the required five-step sequential framework to determine whether Plaintiff was disabled. *See* 20 C.F.R. §§ 416.920(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged

disability onset date. At step two, the ALJ concluded that Plaintiff had a several "severe" impairments including cervical degenerative disc disease, cervical radiculopathy, asthma, depression, anxiety, and obesity. The ALJ also determined Plaintiff had "moderate" impairment in concentration, persistence or pace.

At step three, the ALJ determined that none of the physical or mental impairments meets the requirements of severity listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Plaintiff "has the residual functional capacity to perform light work . . . except the claimant should avoid excessive pollutants and cannot perform tasks with detailed instructions." At step four, based on the residual functional capacity assessment, the ALJ found that Plaintiff could not perform any of his relevant past work. Finally, at step five, the ALJ relied on the testimony of the vocational expert to conclude that Plaintiff could perform work as a photocopy machine operator, light assemblers, and an "inspector job." At step five, the ALJ did not incorporate his finding of a "moderate" limitation in concentration, persistence, or pace in a hypothetical he posed to the vocational expert. Instead, he asked the vocational expert if jobs exist in the national economy for a person with Sawyer's limitations, including, among others a limitation to "[n]o detailed instructions."

## II. PROCEDURAL HISTORY

On August 5, 2016, the ALJ issued a decision, unfavorable to the Plaintiff. The Appeals Council denied Plaintiff's request for review. Plaintiff appealed to this Court, and this Court referred the appeal to Magistrate Judge Hey for a Report and Recommendation under the authority of 28 U.S.C. § 636(b)(1)(B). Judge Hey issued a Report and Recommendation, upholding the ALJ in all respects. Plaintiff filed objections to Judge Hey's Report, raising four issues. Plaintiff contends that Judge Hey erred in (1) upholding the ALJ's evaluation of Mr.

2

Sawyer's mental impairments; (2) upholding the ALJ's determination that Plaintiff's PTSD disorder did not qualify as a severe impairment; (3) failing to find that Plaintiff's obesity affected his functioning; and (4) finding that the ALJ's hypothetical to the vocational expert was flawed, but ultimately sufficient under the circumstances. With regard to the last point, which is the critical issue at this stage, Judge Hey found that the ALJ's hypothetical to the vocational expert was deficient because the ALJ failed to consider Plaintiff's moderate limitations in concentration, persistence, or pace. Nevertheless, Judge Hey determined that this failure was essentially harmless in light of the vocational expert's testimony and in reliance on certain Third Circuit decisions discussed below.

### III. STANDARD OF REVIEW

Review of an ALJ's determination is highly deferential. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The decision must be affirmed "if supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla" of evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotations omitted). In contrast, the Court has "plenary review of all legal issues." *Schaudeck*, 181 F.3d at 431 (citing *Krysztoforski v. Chater*, 44 F.3d 857, 858 (3d Cir. 1995)).

### IV. DISCUSSION

The sole question, at this stage, is whether the ALJ was obligated to include in his hypothetical the fact that Plaintiff has a "moderate" limitation in his concentration, persistence, or pace.[1] In order to determine the answer, a little bit of background is necessary.

---

[1] The Court adopts Judge Hey's well-reasoned Report and Recommendation with respect to all other issues presented.

### 1. Background of the Five Step System

The Social Security Administration regulations provide a familiar five-step process to determine if an applicant is entitled to benefits. *See* 20 C.F.R. § 416.920(a)(4). In short, at step one the ALJ asks whether the applicant has been working; at step two, whether the applicant's medical impairments meet certain severity and duration requirements; at step three, whether these impairments are included in a list of impairments defined in the regulations; at step four, whether the applicant can perform his past work given the limitations imposed by the medical impairments; and at step five, whether the applicant can still perform work existing in the national economy. If the ALJ determines that the claimant has been working (step one) or that the claimant does not have severe impairments (step two), then a finding of "not disabled" is directed by the regulations. *Id.* If the impairments are listed in the regulations (step three), then a finding of "disabled" is directed. *Id.* If not, the ALJ proceeds to the next step. At step four, the ALJ assesses the claimant's Residual Functional Capacity ("RFC"), which is "the most" the claimant "can still do despite" their limitations, to determine if the applicant can perform his or her relevant past work. 20 C.F.R. § 416.945(a)(1). To make this assessment, the ALJ must consider "all of [the claimant's] medically determinable impairments," including those not labeled severe at step two. *Id.* § 416.945(a)(2). And finally, at step five, the burden shifts to the Commissioner, and the Commissioner must prove that jobs exist in the national economy for an individual with the applicant's limitations. *See* 20 C.F.R. § 416.960(c).

The nub of this dispute concerns step two (an evaluation of mental impairments) and step five (whether the applicant can perform jobs in the national economy) because the ALJ allegedly did not incorporate the step two mental impairments in his step five hypothetical to the vocational expert. At step two, an applicant's mental impairments are assessed using a

Psychiatric Review Technique Form (PRTF). In 1985, the Social Security Administration issued regulations explaining how to evaluate an applicant's mental impairments at step two. The regulations required the ALJ to evaluate mental impairments across four broad areas of functioning. Those include: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) deterioration or decompensation in work or work-like settings. *See* 20 C.F.R. § 416.920a (1999). The 1985 regulations provided that the third functional area – relating to concentration, persistence, or pace – must be rated on a five point scale of never, seldom, often, frequent, and constant. *See* 20 C.F.R. § 416.920a (1999) (the "Frequency Scale"). Those regulations were amended to require the ALJ to evaluate a claimant's concentration, persistence, or pace according to a different five point scale based on severity ("the Severity Scale.") The new ratings are none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 416.920a(c)(4).

There are two critical differences between steps two and five. First, The ALJ's assessment of the claimant's mental limitations at step five must be "more detailed" than the assessment at step two. *See Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004) (discussing Social Security Ruling 96-8p (July 2, 1996) which provides for a "more detailed" assessment at step five). Second, whereas the burden is on the applicant to show that they are impaired at step two, the burden shifts to the Commissioner at step five, to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(a)(c).

Although there are many ways for the Commissioner to meet its burden of proof at this step, it is fairly standard practice to call a vocational expert to testify. *See Burns v. Barnhart*,

312 F.3d 113, 119 (3d Cir. 2002) ("At the fourth and fifth steps, the ALJ often seeks advisory testimony from a vocational expert."). "Testimony of vocational experts . . . typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ. . . . The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Id.* (quoting *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984)). As a result of the frequency with which vocational expert testimony is accepted, a substantial body of case law has developed to guide the ALJ's use of such evidence.

### 2. Third Circuit Precedent

In general, the ALJ's hypothetical must incorporate a claimant's impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269 (3d Cir. 1987). The Third Circuit has stressed that the hypothetical requires "great[] specificity" and "must reflect *all* of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 122-23 (3d Cir. 2002) (quoting *Chrupcala*, 829 F.2d at 1276) (emphasis in original). "[O]therwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala*, 829 F.2d at 1276. If the testimony cannot be considered substantial evidence, then the Commissioner has not sustained their burden of proof at step five.

Following *Chrupcala*, the Third Circuit has explained precisely which impairments the ALJ must incorporate into their hypothetical. In *Burns v. Barnhart*, the Third Circuit explained that the hypothetical must incorporate impairments for which "there exists in the record medically undisputed evidence." *Burns*, 312 F.3d at 123. In that case, uncontroverted medical testimony indicated that the applicant was "borderline in the areas of reliability, common sense, ability to function independently, and judgment." *Id.* However, the ALJ's hypothetical

6

restricted the applicant to "simple repetitive one, two-step tasks." The Third Circuit remanded, finding that the hypothetical was flawed, because it "does not specifically convey [the applicant's] intellectual limitations. . . . Rather, it could refer to a host of physical and mental limitations, such as a person's mechanical or small motor skills, his lack of initiative or creativity, or a fear of, or unwillingness to take on, unfamiliar tasks." *Id.*

But, a hypothetical must also include an applicant's limitations in other situations as well. Specifically, the ALJ must incorporate his or her step two PRTF findings regarding an applicant's limitations in concentration, persistence, or pace in their step five hypothetical if the ALJ determined that the applicant "often" has limitations in those areas. *See Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004). In *Ramirez*, the Third Circuit disapproved of a hypothetical restricting an applicant's potential work to "simple tasks" when the ALJ also finds that the applicant "often" has deficiencies in concentration, persistence, or pace. The Third Circuit reasoned that "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." *Id.* at 554.

Since *Ramirez*, the relevant regulations have changed, although the import of the case has not. Instead of a scale based on the frequency of concentration deficiencies, the ALJ is now required to assess the severity of an applicant's concentration deficiencies. Whereas the ALJ in *Ramirez* determined that the applicant "often" has deficiencies in persistence, pace, and concentration, the ALJ in this case determined that Sawyer has "moderate" deficiencies in the relevant areas. District courts have issued conflicting opinions on "[w]hether there is a difference between functional impairments defined by degree or frequency." *Debias v. Astrue*, 2012 WL 2120451, at *5 (E.D. Pa. 2012); *see also Douglas v. Astrue*, 2011 WL 482501, at *4

7

(E.D. Pa. 2011). However, the weight of authority suggests that the two scales are functionally equivalent. *See, e.g., Plank v. Colvin,* 2013 WL 6388486, at *10 (E.D. Pa. 2013) (referring to cases equating the two scales as the "majority rule"); *Strouse v. Astrue,* 2010 WL 1047726, at *6 (E.D. Pa. 2010) ("The functional scale used to assess concentration, persistence, or pace was changed in 2000. . . . Courts in this district have thus found "moderate" on the new scale and "often" on the old scale are equivalent); *Colon v. Barnhart*, 424 F. Supp.2d 805, 811 (E.D. Pa. 2006) (holding that 'often' and 'moderate' are equivalent because they fall on the same point on a five-point continuum). There is no logical reason why a hypothetical must include a limitation experienced frequently, but not experienced in like degree. The *Ramirez* court reasoned that an employer would want to know whether an employee has to stop frequently due to their limitations. Likewise, an employer would want to know whether an employee has limitations in their overall capacity to concentrate, keep pace, or persist. The end result of either limitation is the same: an employee would not be able to meet a quota or efficiency requirement.

    Nevertheless, at least three unreported Third Circuit cases have held that a hypothetical restricting an applicant to "simple" tasks is sufficient even where the ALJ has determined that the applicant possesses moderate difficulties in concentration, persistent or pace. *See Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167, 168 (3d Cir. 2014); *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008); *Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008). As a preliminary matter, these cases are not precedential and thus *Ramirez* is still binding. In *Holley*, the court found that the facts of that specific case, particularly the "generally very thin . . . evidence Holley produced on mental impairments," indicated that the ALJ's hypothetical was sufficient even though it did not include the applicant's moderate limitation in concentration, persistence, or pace. *Id.* at 169. The *McDonald* court distinguished *Ramirez* without analysis

8

and it did not directly address the issue of the change in the scale used to assess concentration, persistence, or pace. *See McDonald* , 293 F. App'x at 946 n.10. And the *Menkes* court did not even cite *Ramirez*. *See Menkes*, 262 F. App'x at 412.

District courts in the Eastern District of Pennsylvania have issued conflicting decisions and debated extensively whether *Ramirez* is still binding in light of subsequent unreported cases. Relying on *McDonald* and *Menkes*, some have held that a hypothetical's limitation to simple tasks is sufficient where the ALJ finds an applicant has only moderate deficiencies in concentration, persistence, or pace.[2] Relying on *Ramirez*, other district courts have construed *McDonald* and *Menkes* as nonbinding.[3]

### 3. Non-Third Circuit Case Law

Meanwhile, several other circuits have weighed in on this precise issue and found that the ALJ's hypothetical is deficient if it limits the applicant's potential jobs to those requiring only "simple" tasks where the ALJ determines that an applicant has a "moderate" deficiency in concentration, persistence, or pace. The Fourth, Seventh, and Eleventh Circuits have rejected the argument that the ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Winschel v. Comm'r of Soc. Sec*., 631 F.3d 1176 (11th Cir. 2011). In

---

[2] *See, e.g.*, *Perez v. Colvin*, 2016 WL 5027734, at *1-2 (E.D. Pa. 2016) (Leeson, J.); *McCall v. Colvin*, 2015 WL 9302929, at *9 (E.D. Pa. 2015) (Buckwalter, J.); *McBeth v. Colvin*, 2013 WL 6061364, at *17 (E.D. Pa. 2013) (Diamond, J.); *Santiago v. Astrue*, 2012 WL 1080181, at *9 (E.D. Pa. 2012) (Baylson, J.), *Douglas v. Astrue*, 2011 WL 482501, at *4-5 (E.D. Pa. 2011) (Shapiro, J.); *Reid v. Astrue*, 2009 WL 2710243, at *6 (E.D. Pa. 2009) (Robreno, J.).

[3] *See, e.g., McPherson v. Colvin,* 2016 WL 5404471 (E.D. Pa. 2016) (Kearney, J.); *Gray v. Colvin*, 2014 WL 4536552, at *17 (M.D. Pa. 2014) (collecting cases) (Cohn, J.); *Plank*, 2013 WL 6388486, at *10 (Diamond, J.); *Trout v. Astrue*, 2011 WL 3652500 (E.D. Pa. 2011) (Caracappa, J.); *Strouse,* 2010 WL 1047726, at *6 (Sanchez, J.); *Weinsteiger v. Astrue*, 2010 WL 331903, at *10 (E.D. Pa. 2010) (Yohn, J.); *Whack v. Astrue*, 2008 WL 509210, at *9 (E.D. Pa. 2008) (Buckwalter, J.); *Bunch v. Astrue*, 2008 WL 5055741, at *3 n.4 (E.D. Pa. 2008) (Baylson, J.).

*Mascio*, the court reasoned that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* at 638. The rationale of *Mascio* is precisely the same rationale the Third Circuit used in *Burns* when the court stated that a limitation to "simple, repetitive tasks" does not convey intellectual limitations. In *Varga*, the Seventh Circuit reasoned that the terms "simple, routine, and repetitive tasks" refer to "unskilled work," "which the regulations define as work that can be learned by demonstration in less than 30 days [but] whether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments . . . can perform such work." *Varga*, 794 F.3d at 814. Meanwhile, the Eighth and Ninth Circuits have held that, in these situations, a hypothetical restricting work to "simple" tasks is sufficient where medical evidence indicates that an applicant can continue to perform simple tasks. *See Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

Although the Ninth Circuit formulation is consistent with the Third Circuit's unpublished decision in *Holly*, where medical evidence suggested the applicant could perform simple tasks, its reasoning is inconsistent with *Ramirez* and *Burns*, where the Third Circuit explained that some limitations in concentration, persistence, or pace would preclude an employee from working on simple, repetitive tasks. *Ramirez* and *Burns* are published cases and therefore binding and precedential. As such, the Court will continue to apply the holding of *Ramirez* and *Burns* unless directed otherwise by a published decision from the Third Circuit. *Cf. In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006) ("Under this court's Internal Operating Procedures ("IOPs"), [unpublished opinions] are 'not regarded as precedents that bind the court

because they do not circulate to the full court before filing.' *A fortiori*, they are not precedents for the district courts of this circuit.") (quoting 3d Cir. IOP 5.7 (July 1, 2002)).

There are other reasons to require the ALJ to account for an applicant's limitation in concentration, persistence, or pace in a hypothetical as well. Those reasons include those proffered by the other Circuits addressing this issue. First, "the ability to perform simple tasks differs from the ability to stay on task." *See Mascio,* 780 F.3d at 638. Second, the term "simple tasks" is defined by the regulations to mean something very different from the types of tasks that an individual with a limitation in concentration, persistence, or pace can perform. *See Varga*, 794 F.3d at 814. There are other practical reasons as well. First, following the holding of *Ramirez* will promote predictability and uniformity among the district courts until the Third Circuit dictates otherwise in a published decision. Second, at step five, the Commissioner has the burden of proof to show that the applicant can perform other jobs that exist in the national economy. If the vocational expert does not know about a physical or mental impairment because a hypothetical does not include it, then they cannot provide substantial evidence to sustain the Commissioner's burden.

### 4. Applying the Law to This Case

In this case, the ALJ determined, at step two, that Sawyer has a "moderate" limitation in his ability to concentrate, keep pace, or persist. Nevertheless, the ALJ's hypothetical omitted any reference to this moderate limitation. Instead, the hypothetical limited Sawyer's potential jobs to those requiring "no detailed instructions." Judge Hey found that the "hypothetical is insufficient whether one applies *Ramirez* or *Menkes/McDonald*." There can be no doubt that this is the case. The Third Circuit, in *Ramirez*, disapproved of a limitation to "simple, routine tasks." A limitation to "no detailed instructions," says less about an individual's ability to concentrate,

persist, or keep pace than the limitation in *Ramirez* because it only refers to an employee's ability to learn instructions, rather than perform.

As a result of the limitation to "no detailed instructions," the vocational expert limited Sawyer's potential jobs to those with an SVP level of two. Jobs with an SVP level of two correspond with "unskilled" work which can be learned in less than 30 days. *See Varga*, 794 F.3d at 814. There is nothing in the regulations or in the Department of Labor's Dictionary of Occupational Titles (DOT), which limits jobs with an SVP level of two to those without quotas or other efficiency requirements or expectations. And the Court is not in a position to guess which jobs have quotas and which do not. Doing so, as the Commissioner suggests, puts the burden on the applicant to prove that they cannot perform jobs in the national economy. This is not permitted at stage five.

After concluding that the hypothetical was flawed, Judge Hey determined that a person with a moderate limitation in concentration, persistence, or pace could still perform the jobs identified by the vocational expert including a gasket inspector and a photocopy machine operator. Judge Hey relied on *Menkes* and *McDonald* as authority to support the contention that a limitation to simple routine tasks *or* unskilled work is sufficient to account for a moderate limitation in concentration, persistence, or pace. However, given the precedent established by *Ramirez*, and in light of the reasons identified above for that precedent, the Court declines to follow *Menkes* and *McDonald*.

The Court recognizes that the ALJ may have a valid explanation for limiting his hypothetical to those requiring only "no detailed instructions." He may have determined that despite Plaintiff's moderate limitations in concentration, persistent, or pace, he could still perform unskilled work, as defined by the DOT. The ALJ, however, provided no such

12

explanation for his omission. The Court is not a vocational expert and is thus not in a position to impute reasons why the ALJ did not include this limitation in his hypothetical or whether his failure to do so is harmless in this case. Absent further vocational expert testimony with an appropriate limitation (or explanation), the Court cannot speculate as to the outcome.

## V. CONCLUSION

"A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing." *Podedworny*, 745 F.2d at 221. "The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id.* at 221-22. In this case, a remand is necessary to develop the record in light of an appropriate hypothetical to the vocational expert.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**

**April 5, 2018**